The fractionated Indian trust interests that their father left them in his will would as chief to the Sisseton-Wakanton Sioux tribe— We read the letter. We understand the fact. What about the argument that fiduciary duty was owed to not only advise of the legislated as chief, but to also advise that there might be legal remedies that would soften or eliminate the economic impact of the statutory as chief? That was the key to the district courts holding, Your Honor, that even though they filed their suit 14 and a half years after they got actual notice of the as chief, that the government owed them a fiduciary duty, not just to inform them of the fact— So you're the appellant. You have to convince us that the trial judge was dead flat wrong on that. I plan to do that, Your Honor. The district court said that the government should have notified them of their potential lawsuit against the government that they could have sued. But that holding is directly contrary to well-established Federal Circuit precedent to the effect that the statute of limitations applies to Indians as it does to any other plaintiff. I can't apply precedent. I can only apply one decision at a time. So tell me what the precedent is on which you primarily rely in saying that. In the Hopland Band case and Catawba Indian Tribe case, among others, this court held that the plaintiff need not understand her legal rights for her claim to improve. She only needs to know the facts. And in Martinez, on Bonk, the court said furthermore that to show that a late-filed claim is timely against the government, you need to show that the government concealed the facts or that the facts were inherently unknowable. The same rule applies to Indians. But this wouldn't involve a late-filed claim if the government, in fact, had a legal obligation to advise about the claim. In that event, the claim would have been timely, even though 14 years after the initial letter. I don't believe so, Your Honor. The complaint in this case alleged— It doesn't seem like Martinez applies here. Well, Martinez held that—I think the more helpful cases here are Hopland Band and Catawba Indian Tribe. Well, then let's talk about Hopland in the fleeting time we have. I think the key here is to understand that the claim in this case—there's a single claim in this case. Both of the sisters made the same claim, which is that the 1987 mischiefs took their father's right to dispose of his property. That's the claim in this case. Now, all that they need to know in order for their claim to approve is the fact that gives rise to the claim. That's what this court has held repeatedly. It would certainly be true if it were me, but the entire rationale of the judge seemed to be that the DuMars' sisters are not ordinary people like Michelle. They are trust beneficiaries who are owed heavy special duties of guidance by the Department of Interior. So what's your response to that? The Menominee Tribe case is perhaps the best answer to that. In the Menominee Tribe case, the court held—I'll quote from the case—that the statute of limitations was, quote, not told by the Indians' ignorance of their legal rights or simply because of the existence of a trust relationship. In other words, as this court has said repeatedly, the fact that they are Indians is of no moment. The statute of limitations applies in the same way. And they were trustees as well. Correct. So they have to have an obligation. But perhaps part of the court's confusion is that there is no fiduciary duty claim in this case. There's no breach of trust claim here. They have expressly—we said in our opening brief—they never have made a breach of trust claim. The district court said very clearly that there is one claim. It's a taken claim. They said that very clearly in the district court. In our opening brief on appeal, we said plainly there is no breach of trust claim in this case. That may be true, but the rationale of the trial judge was that a fiduciary duty was owed to these sisters by the Interior Department to advise them of the existence of a potential lawsuit. Your Honor, that is, as I explained, the Menominee Tribe said exactly the opposite. That the government doesn't have a duty, that the ignorance of legal rights is not of any moment, even in a case—even in that case, that was a breach of trust claim, unlike this case. And even in that case, this court held that the ignorance of the legal right to sue the government doesn't have any impact on the statute of limitations. All you need to know is when the event that gives rise to your claim occurred. And in this case— If that's true, then you're necessarily saying that an Indian trust beneficiary is no better off than any other American who's not the beneficiary of a trust because all they have to be told is the bare-bones facts of what the statute has done. That's exactly right, Your Honor. That's what this court has held. Keeping in mind, again, this is a takings case. This is not a breach of trust claim. This is a straight-up takings case. Why is it a takings case if money damages for the taking compensation, just compensation, weren't awarded, they send it back for reprobate? Yeah. First of all, it's a takings case because that's what the complaint said. Because in the district court, it was the United States that tried to say, actually, you've got several different claims here. The plaintiffs resisted that. The district court agreed. The district court said very plainly, page 9 in particular of the joint appendix, there's one claim. It's a taking claim. That's the first thing. That's the claim that they made in their complaint. Well, I find the legal situation confusing, probably because the Supreme Court decision on which it relies was confusing. Well, the Supreme Court, Podell v. Irving was also the second reason this is a taking case, is because Podell v. Irving was a takings case. And we argued in the district court, to get a little further into your question, we argued in the district court that equitable relief wasn't available. We didn't pursue that argument on appeal. So that we have affirmatively waived that argument on appeal, the only argument. Suppose we agree with you that this is a takings case and nothing but a takings case. How does that gut the rationale of the trial judge that the sisters had not been informed of all the things that they would have to be informed of before the six-year statute of limitations clock would begin to run? Because there's nothing more that they needed to be informed of to bring their suit. That's your position, but I don't understand how the fact that this is only a takings case means that no one is allowed to consider what the government was obligated to tell the sisters to start any statute running. Because this court has held, Your Honor, that the government doesn't have to inform them of their right to sue the government. The government has to inform them what it's doing. And the Spirit Lake Tribe case from, I think, the Eighth Circuit is also helpful on this point. Isn't the government in a conflict situation here? In what sense, Your Honor? And so they took the act under authority of another branch of the federal government, and yet they don't advise their beneficiary that they have a cause of action because of the action that the government has taken. Your Honor, there's no case that I know of in any court where any court has held that the United States has a fiduciary duty to inform a beneficiary of their right to sue. But this fact situation hasn't come up before, has it? Well, this fact situation, as Mr. Dolan agrees, is quite similar to Hodel v. Irving and Yupi. We have these sorts of fact situations all the time. But no court has held, and it would be contrary to this court's precedent. Did Hodel deal with the statute of limitations? I'm sorry? Did Hodel deal with the tolling of the statute of limitations? No. Those claims were timely filed. We didn't raise the statute of limitations in this case. OK. So there is no authority on this fact situation. But there's plenty of statute of limitations cases against the government, even in cases involving Indians, like the Menominee Tribe case, Papuan Band, Catawba Indian Tribe. They didn't involve this statute. They involved other quite different statutory schemes. Isn't it possible that there's a different rule of the fiduciary obligation to inform, depending on the statute and the nature of the situation? Well, if we were to get into the merits of a breach of trust claim, if there were one here, there's no statute that imposes a fiduciary duty on the United States to inform them of their claim. Well, fiduciary duties are not normally grounded in statute. They're normally grounded in notions of what is owed to the beneficiary under the circumstances. Of course, there's some statute in the background. But usually, the statute doesn't spell out the fiduciary duties in detail. That's why we have the law of fiduciary relationships, the whole elaborate body of law. I don't want to get too far off track here, Your Honor. But with all due respect, I think that's exactly wrong. I think that the Supreme Court said quite clearly last year that a fiduciary duty is grounded on a statute necessarily. And if they had made a fiduciary duty claim here, it would necessarily fail. But they didn't make one, and they have never asserted one. Holding in this case, if the court were to hold in this case that the United States, that the statute of limitations was told because the government didn't inform them that they could sue the United States, that holding would conflict with numerous precedents of this court. Poplin banned Catawba. Bonamini tried Martinez. I don't think that the court can reach that conclusion based on this court's precedents. And interestingly, the plaintiffs haven't really made much of an effort to support that reasoning. I think they understand also that it is flawed under this court's precedents. So they have approached it from a completely different angle. They've made a continued— We're bound by prior panel decisions. There's no question about that. So whether they're viewed as appealing precedents or not, they govern nevertheless. So to the extent that Judge Gaillard's opinion or my opinion and Hopland's or the others that you've relied on control, they control. There's no point in going around and around on that. To the extent that they might not control, what is your argument as to why, as a matter of public policy, the obligation of the Interior Department should be so low? What's the harm in telling the sisters, we're taking away the land you thought you were getting from your father's will, but you might be able to get some money compensation for that if you file a takings lawsuit in court. I'm not sure that the government could have done that at the time. And if you think about the timing here, the escheats at issue in this case happened in 1987, which was the same year Hodel v. Irving came out. And as the court is aware, before Hodel v. Irving was decided, the statute had been amended already. So I imagine that Congress and the Department of the Interior, under the impression that they had fixed the constitutional problem. So at that time, at the time the final probate order came out, I don't know what the Interior Department would have said. What Your Honor is really suggesting, then, is that every time— Isn't the best answer that the government has no duty to be the lawyer for the individuals here? Well, that's what I've been trying to say. I think that's what this court has said on numerous occasions in these cases we've been talking about. We are the trust—we manage the trust, the land in trust, but we don't serve as their counsel. So what the court is actually suggesting is that every time the Department of the Interior takes some action with regard to Indians, it also has to throw in a footnote saying, oh, by the way, you might be able to sue us about this. So that's the extreme. There was one action here, and you say Hodel came down, and what would they have said? Well, it's simple. What they would have said, they would have said it after Hodel came down. But I understand your position. So I guess I'd like to, if I can, save some time, unless the court has further questions for me. Thank you. Mr. Dolan? I don't know that we should manage your time for you, but it seems to me that you are in great need of addressing and distinguishing the two or three precedents of this court that Ms. Kovacs has relied on and repeatedly forcefully cited, because they certainly bind this panel. They certainly are. Before I get to that point, I'd like to let the court know, just so that I have time to address it eventually, the statute of limitations that applies here is 20 years. That's not addressed in our brief, because a different statute was raised on reply by the United States, and at some point I want to address that. So going to your question, Judge. Now, wait a minute. You think you're going to argue here that a statute of limitations of 20 years that was not litigated below and not in the brief before us is suddenly going to be the dispositive issue in this case? Absolutely, Judge, and I'll tell you why. The complaint below… Well, we don't ordinarily allow people to bring up authorities, including statutes, for the first time in the middle of oral arguments. That's what the briefs are for. Your Honor, if that was the case, we wouldn't be considering 2401A. That was not raised below as to the sister's claims for restoration of the property rights. The complaint below made four claims. It said, declare the statute as unconstitutional. They said, enjoin… The judge ruled based on 2401 expressly. Absolutely, Judge. So it was in the case before him. It was with respect to the claim for compensation for loss of use of the eschated land. There was never a request for just compensation. The request was, give us back the land interest. The United States argued below that the Quiet Title Act applied to that claim. The United States argued that the Quiet Title Act and the 12-year statute of limitations applicable under the Quiet Title Act applied to prohibit that claim. Now, what we said is the Quiet Title Act does not apply here. It has a specific preclusion against applying to Indian trust land. Now, 2401A was at issue for loss of use of the eschated lands. And there we did discuss 2401A. And there we did discuss the general nature of the trustee relationship. And there we did discuss breach of fiduciary duty that were… My question to you is where did you argue that, as to the rest of the lawsuit, a 20-year statute with a different citation applied? We never did, Judge, because that question was never raised. Well, well, well, well, it was never raised. If it's part of your case, it's your obligation to raise it in front of the trial judge. If you didn't do it, you waived it. No, Judge. It is not our obligation. It was the defendant's obligation to raise an affirmative defense. They did. As to that particular claim. We argued—we discussed 2401A as to loss of use, Judge. We never discussed 2401A. We or the United States or appellants discussed 2401A as to the claim for restoration of the land. Why is that an issue before us? This court will affirm summary judgment if it can be sustained on any grounds that is evident in the record. So, would you like me to address the 20 years, or would you like me to address your first question, Chief Judge? Well, there's a claim made. The government says statute of limitations is six years. Wouldn't it have been appropriate for you to say, oh, no, it's 20 years? What we said is a claim made. They said statute of limitations is 12 years, and the court didn't have subject matter jurisdiction. That's what they argued below, Judge. Now, with the claim for loss of use, they said 2401A applies. Judge, we abandoned the claim for loss of use in a Second Amendment complaint. That claim is not before this court, and I would agree to you today that that claim would be subject to the six-year statute of limitations for loss of use of the achieved land. Well, wait a minute. So you're saying this is not a takings case? This is a takings case, Your Honor. Well, if it's a takings case, isn't it indisputable that the six-year statute applies? Absolutely not, Your Honor. Your Honor, let's do it in B rank. In that case, the Supreme Court of the United States addressed when is a claim against the United States or merely an officer sued against one of its officers. The court said the general rule is that as soon as it gets to the sovereign, if the judgment was sought to, it would expend itself in the public treasury or interfere with the public administration, or if the effect would be to restrain the government from acting or compelling it to act. But there are two exceptions, and these are what we call the Larson-Malone test in our brief. Other courts refer to it as the Lee-Malone test, but it's exactly the same. The action of an officer of the sovereign, be it holding, taking, or otherwise legally affecting the property, can be regarded as so legal to permit a suit for specific relief against the officer as an individual, only if, A, it was not within the officer's statutory powers, or, B, if within those powers, their exercise in that particular case was constitutionally void. That is precisely what we argue below, Your Honors. The exercise of the Secretary's powers was constitutionally void under the Fifth Amendment. There is no response. Void because there was no compensation or void because it was an illegal enactment? Your Honors, first, that question isn't precisely in front of the court. Second, it was void because of Hodel v. Irving and Babbitt v. UB. There, the Supreme Court of the United States recognized this is such a violation of a fundamental right, a fundamental property right of the Constitution, it cannot go forward. Which means what? Compensation? Or an illegal act in which case void is? It's either void or voidable, depending upon which way you want to look. Taking results from a legal action by the federal government, by the government, right? A lawful action then produces, justifies compensation. The Secretary had lawful authority to deal with the transfer of the heirs of the estate in this particular case. That is true. But the Secretary's exercise of its power in this particular case is constitutionally void because of the Fifth Amendment taking. Your Honor, let me go right to Malone. The Malone case by the Supreme Court was discussing Lee, which is one of the first cases that dealt with this particular issue. And Malone specifically says, the Lee case has continuing validity only where there is a claim that the holding constitutes an unconstitutional taking of property without just compensation. That's what we argued. We argued unconstitutional without just compensation. We want our property back. The Supreme Court in Malone recognized that this case— Your property back isn't just compensation. It's a void of the statutory enactment. Yes, sir. It's not just compensation. We didn't ask for just compensation. Which is what you get under a taking. That's why this case is so confusing. This case is confusing somewhat, but if we look at this one chain of authority, from Lee to Land to Larson to Malone to Dugan, and then at Treasurer Selvers— Mr. Dolan, what we have to look at is what the district judge did. He treated this as a takings case, and he granted relief as a takings. Yes, sir. And this is a takings case. This is a takings case, and all of these Supreme Court cases deal with takings cases. That's what Malone specifically says. It specifically says you have an officer suit to restore your property, even though—excuse me. Again, when you claim that the holding constitutes an unconstitutional taking of the property without just compensation. Well, if this is a takings case, then how can you argue that 2401 does not apply? Because, Your Honor, the next—what does the Larson-Malone test say? It says that this is an officer suit. It is not a suit against the United States. There is no— No, you can't have a takings claim against an officer. The takings claim derives from the actions of the United States. Your Honor, I'm certain that's probably the case 99 percent of the time, but there is the Larson-Malone test. And I'm not just resurrecting— But this isn't a Larson-Malone lawsuit. This ended up being a takings lawsuit and only a takings lawsuit, and therefore 2401 provides the applicable statute of limitations, and it's six years. Your Honor, I can only say it so many times. Malone, for example, specifically— It won't help to say it more times. It will help to say it more clearly. Okay. Let me take a step back. What was the claim below? The claim below was you have property. You didn't compensate us for it. It was such a violation. We want it back. Under all the authority I give to you in my briefs—in our brief, rather, that is what precisely applies. And the government defends and says statute of limitations. Under the Quiet Title Act. What the government said, Your Honor, what the government said is—the government said we didn't have the right to that property at all, to recover their property at all. Because what the government said is that, look, the Quiet Title Act is what gives—is what waives sovereignty. And the Quiet Title Act doesn't apply here because of the Indian language exception. And even if it did, there would be a 12-year statute of limitations. What we argue in response, Your Honor, is that's preposterous. The Fifth Amendment is self-executing. There need not be any other way. We're here because you won a summary judgment motion, right? Yes, and because the government lost their motion. What was the basis of your summary judgment motion? The basis of our summary judgment motion, Your Honor, is different than the argument that's being raised on appeal. The basis of our summary judgment motion was this was an unconstitutional taking. Give us our land back. But how about the SOL? Wasn't it part of the judgment below that there was a breach of fiduciary obligation? Absolutely. We discussed that, Your Honor, in the context of the loss of use. Did you argue a breach of fiduciary obligation below? Absolutely. Now, that's going to get us to a different question. We absolutely said this is a takings case. The government is going, well, they never alleged it was a breach of trust case. Now, when we raised our arguments below on trust and fiduciary duty, the United States never said, oh, well, hold on. This is a takings case. None of these principles apply. Let's go to Hopland Band. In the Hopland Band case, this court discussed a claim where there at one point wasn't trust. It sounds like you're the appellant because you're attacking what the district judge did. You're saying we have a lawsuit having to do with the return of land, and the district judge wrongly treated it only as if it were a takings case. No, Judge. There wasn't only a takings claim. Maybe that's where I'm missing your question. There was not only a takings claim. There was also a claim for loss of use of the land. We said, look, the government took the land. We want it back, and we want compensation for the time that we didn't have the use of the land. Now, that claim's been abandoned, but that was what was at issue below with respect to 2401A. 7-0. Going to 2401A, let's talk about— As I understand it, your summary judgment motion was granted on the grounds that you had established a takings. Yes. Now, if that's what the ruling was below, I don't see how there can be much question of what statute of limitations applies to that takings claim. Your Honor, it's because there were different claims. The statute of limitations argument— There weren't different claims as your summary judgment motion was granted. At that point, the claims had effectively collapsed into a takings claim only. Your Honor, what's at issue here isn't the grant of our summary judgment. Of course it is. It's the denial of their motion. Wrong. Absolutely wrong. The only reason we're here is that you won relief on summary judgment in the district court, so they appealed. They don't want you to get the relief. Sure. So either the summary judgment grant is defensible or it isn't. You're trying to argue some other case, not the case that we have in front of us. Your Honor, we are talking about 2401A, the decision as applicable to Colleen Renville DeMars. The United States moved for partial summary judgment against Colleen Renville DeMars' claim. I don't care about their motion. Your motion is the one that was granted. I don't care about their motion for summary judgment. They didn't win. You won. Your Honor, either way, the district court's decision was correct. With respect to 2401A, regardless of whether or not this court was to consider for the first time whether it applies to the restoration of the land or not. Your Honor, if we go to— Well, it can only be correct if the 2401, if the government in its letter had not told the sisters everything the law obligated it to tell them. That's not true, Your Honor. That is what the first— We seem to be wrong about everything, in your view. I don't want to assume anything, Your Honor, and that is— Too late. All right. First, to get to the point we are at, to talk about the 2401A, you have to assume that the Larson and Malone test does not apply, which it does, according to our recent, according to precedent. We have to assume that they haven't waived their statute of limitations for defense with respect to Pamela Renville, where they never made any statute of limitations argument whatsoever. I thought their cases were consolidated. Why are you arguing about the other sisters? Your Honor, the case was not consolidated until the very last minute. Pamela Renville— But nonetheless, it was consolidated, and both of the sisters' claims derived from the same party. Certainly, Your Honor, certainly. But let's go to the statute of limitations. The statute of limitations period did not commence or has not occurred for statute of limitations purposes. In Hoplin v. Baird, this court said that the general rules of the statute of limitations does not run against a beneficiary in favor of a trustee until the trust is repudiated and the fiduciary relationship is terminated. While this rule does not apply in claims for damages arising from misfeasance or malfeasance of the trustee, it does apply to a claim for recovery of the trust's corpus, and that is what plaintiffs below sought. They sought recovery of the trust's corpus. They wanted the land interest back. Now, Fraconia later recognized that accrual principles, such as Theros considering repudiation of a contract, applied to § 2425-01, and they certainly applied here to § 241A. Your Honor, here's the big difference between now and Hoplin. In Hoplin, this court recognized that the trust had been terminated, the fiduciary relationship had been terminated. That is not the case here. Well, she, your opponent, cites Hoplin for a much broader proposition, which is that the Interior Department doesn't have to give legal advice on potential lawsuits to Indian beneficiaries. That's all she cited it for. And that does not apply here, Your Honor. Now, she's talking about— What is the rule? They do have to give legal advice to Indian beneficiaries as to potential lawsuits? Yes. Characterizing it as giving legal advice may not be proper. But the question, Your Honor, is going to that— What's your basis for saying that the Interior letter, in this case, had to advise them that they could file a takings lawsuit? Your Honor, I am not, at this point in time, saying that. What I am saying is that going to the fiduciary duty, which arises from the trust, as you recognize, the fiduciary duty that arises from the trust is to ensure the non-alienation of this land. In Oneida Nation, this court's predecessor— All right, your time has expired, Mr. Dolan. Ms. Kovacs, you have a little bit of rebuttal left, I think a little under a minute. Judge, can I give you the citations that I referenced earlier? Well, they're in your brief, are they not? No, this was when you said— Then you should follow the procedure and give it to us in a letter subsequently. Thank you, Judge. Ms. Kovacs, you have a minute and a few seconds. The Renville's conceded in the District Court that Section 2401 applies here. I refer the Court to page 13 of the Joint Appendix. Second, even if this is a case against Secretary Norton, Section 2401 applies in suits against officers and agencies, as I explained in the reply brief. Third, the complaint in this case alleged a Fifth Amendment taking, and as Judge Lynn pointed out, the United States is necessarily the defendant in a taking case. And fourth, in their District Court pleadings, pages 114, 115, 174, throughout their pleadings in the District Court, they said repeatedly that their claim was against the United States. I won't go into the officer suit theory any further, unless the Court has any questions about it. It is brand new on appeal, and it simply doesn't work here. Even if this were an officer suit, I refer the Court to Duggan v. Rankin, Gulcher v. Weeks in the discussion in the reply brief about why the six-year statute of limitations for trespass would nonetheless apply in this case. Getting back to the point we talked about earlier, Mr. Dolan was just saying that he thinks the test for accrual that applies here is this test of when the government repudiates the trust or terminates the fiduciary relationship. That is the test for a breach of trust claim, as he just said. This is a takings case, and in a takings case, the test in this circuit for accrual is when the United States, by some specific action, takes property. That occurred in 1987. Your time has expired. I think we have your position clearly in mind. I thank both counsel. We'll take the case under review.